KNIGHTS TEMPLAR & MASONS' LIFE INDEMNITY CO. *v.* BERRY *et al.*

(*Circuit Court of Appeals, Eighth Circuit.* May 16, 1892.)

No. 31.

1. **LIFE INSURANCE—CONFLICT OF LAWS—LOCUS OF CONTRACT.**
   A policy of life insurance, which does not become a binding contract until its delivery, is governed by the laws of the state in which the insured lives, to whom it was there delivered by a resident agent of the company, although it was executed and dated at the company's office in another state.

2. **SAME—SUICIDE—ASSESSMENT COMPANIES.**
   Rev. St. Mo. § 5982, providing that, "in all suits upon policies of insurance on life hereafter issued," it shall be no defense that the insured committed suicide, unless he contemplated suicide in applying for the policy, any stipulation in the policy to the contrary notwithstanding, applies to all life insurances, whether issued by assessment or level premium companies, except as otherwise provided by statute.

3. **SAME—REPEAL OF ACT.**
   Acts Mo. 1887, regulating assessment life insurance companies, is limited (section 10) to companies "doing business under this act," and further provides "that nothing herein contained shall subject any corporation doing business under this act to any other provisions or requirements * * * except as herein set forth." *Held,* that an assessment company which has not complied with the requirements of the act cannot be heard to claim that section 10 repealed, so far as applicable to assessment companies, the provision of Rev. St. Mo. § 5982, annulling stipulations against payment of insurance in case of suicide.

4. **SAME.**
   No force can be given to an argument that assessment insurance was not within the contemplation of the legislature at the time of the enactment of Rev. St. Mo. § 5982, in the absence of facts showing that business on that plan was not carried on at that time in the state.

5. **SAME—ASSESSMENT AND BENEFIT SOCIETIES.**
   An assessment "life indemnity company," having no lodges, or social, charitable, benevolent, or literary features, and neither paying sick dues, nor giving other attention to members in distress or poverty, is a life insurance company, and is subject to the regulations imposed by the insurance laws, as distinguished from the laws relating to co-operative benevolent societies, although its insurance is confined in practice, but not by its charter, to members of the Masonic fraternity.
   46 Fed. Rep. 439, affirmed.

In Error to the Circuit Court of the United States for the Western District of Missouri.

Action by William Berry and others against Knights Templar & Masons' Life Indemnity Company. Trial to the court. Judgment for plaintiffs. Defendant brings error. Affirmed.

*Samuel P. Huston* and *Thomas H. Parrish,* for plaintiff in error.

*F. H. Bacon, George Hall,* and *E. M. Harber,* for defendants in error.

Before SANBORN, Circuit Judge, and SHIRAS, District Judge.

SHIRAS, District Judge. On the 6th day of July, 1885, the Knights Templar & Masons' Life Indemnity Company issued a policy of insurance upon the life of John B. Berry, wherein it was provided that upon due

notice and satisfactory proof of the death of said Berry the company would pay, in 60 days after receipt of such proof, to the children of said Berry, the sum of $5,000, subject to the limitation contained in section 1, art. 7, of the constitution of the corporation. On the 7th day of November, 1889, the said John B. Berry committed suicide, and due notice and proof of his death were given to the company. The company refused to pay the full amount named in the policy, claiming that by the express provisions of the policy self-destruction by the insured, whether sane or insane, rendered the contract for the payment of $5,000 void, and the company was only bound to pay the amount which had been paid in assessments by the insured. This action was brought in the circuit court for the western district of Missouri, to recover the full sum of $5,000. The case was tried to the court, a jury being waived. The parties stipulated that the company was liable for the full amount claimed by the plaintiffs, unless excused by the clause in the policy providing that the same should be void in case of suicide; that the policy sued on was issued at the office of the company at Chicago, Ill., was sent to the agent of the company at Trenton, Mo., and was by him delivered to John B. Berry at that place. The court further found that the business of the defendant company is that of life insurance, and nothing else; that there is no social, charitable, benevolent, or literary feature in its organization, or in the conduct of its business; that it has no lodges, pays no sick dues, distributes no aid, and gives no attention to members in distress or poverty. As conclusions of law the court held that the defendant company "is not a co-operative benevolent society, nor a fraternal brotherhood having a community interest, but an incorporated life insurance company on the co-operative or assessment plan, not for mutual benevolence, but for mutual insurance, and as such it comes within the purview of the statutes of Missouri relating to life insurance companies." That the contract of insurance was made in the state of Missouri, and is therefore controlled by the provisions of section 5982 of the Revised Statutes of Missouri, which are as follows: "In all suits upon policies of insurance on life hereafter issued by any company doing business in this state, it shall be no defense that the assured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause that the assured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void;" and that the fact of suicide would not defeat the right of recovery. For the findings of fact and law at length, see 46 Fed. Rep. 439. Judgment in favor of plaintiffs having been entered for the full amount of the policy, the case was brought to this court upon writ of error; and, as stated in the brief of counsel for the company, "the sole question involved is whether the Missouri statute in reference to suicide makes the contract in reference to suicide void." On behalf of the plaintiff in error it is averred "that upon the facts found and the pleadings in the case the contract was made and to be executed in the state of Illinois, and is to be construed by the laws of that state."

It appears from the findings of fact that the company is a corporation

created under the laws of Illinois; that it was engaged in soliciting business in Missouri, having agents in the latter state for that purpose; that by the express terms of section 1, art. 4, of the charter of the company, the contract of insurance does not become binding until the delivery thereof to the insured, and that the policy sued on in this case was delivered by the agent of the company to Berry at Trenton, Mo., at which place the application for the issuance of the policy had been made and delivered to the agent of the company. Under these circumstances, it cannot be successfully maintained that the contract was made in Illinois. In its inception and completion it was made in Missouri, and is therefore to be construed in connection with the provisions of the statutes of that state. The facts of this case bring it clearly within the ruling of the supreme court in *Assurance Soc.* v. *Clements,* 140 U. S. 226, 11 Sup. Ct. Rep. 822, in which it is held that a policy issued in New York by a corporation of that state upon the life of a resident of Missouri, it being provided in the application that the contract should not take effect until actual payment of the first premium, did not become a completed contract until the payment of the premium and the delivery of the policy; and that, as these acts were done in Missouri, the policy must be deemed to be a Missouri contract, and to be governed by the laws of that state. When, therefore, the policy sued on in the present cause was issued and delivered to John B. Berry in Missouri, the clause found therein touching liability for death by suicide was nugatory under the provisions of the statutes of Missouri then in force, provided the policy or contract of insurance is of such a nature as to be subject to the section of the statute in question. It is contended on behalf of the company that the section of the statute is not applicable, "because insurance upon the assessment plan was not within the contemplation of the legislature at the time the suicide clause was enacted;" the argument being that as the issuance of contracts of insurance on the assessment plan had not been entered upon when section 5982 was originally enacted, and as there was not a general statute then in force in Missouri, authorizing companies to carry on this particular kind of insurance, it must be held that this section is applicable only to policies of insurance issued by what are termed the "old-line companies." The section in question was intended to establish a general rule applicable to the business of life insurance, and not merely to limit the powers of a particular class of companies. By its terms it is applicable to all policies of insurance on life, and is not confined to any particular kind of company. Any company engaged in Missouri in the business of life insurance is subject to the provisions of the section, unless it appears that such company is by other sections of the statutes or laws exempt from the operation of the general statute.

The defendant company, according to the findings of the trial court, is not a benevolent or fraternal society, but is purely a life insurance company, carrying on business on what is known as the "assessment plan." The sole business of the corporation being that of life insurance, it cannot avail itself of provisions of the Missouri statutes applicable to associations organized for benevolent, social, or fraternal purposes.

There is nothing in the findings of fact from which it can be inferred that the business of life insurance upon the assessment plan may not, in fact, have been in existence in Missouri when section 5982 was first enacted, and therefore no force can be given to the argument that insurance on that plan was not within the contemplation of the legislature in enacting the clause in question. It thus appears that on the 6th day of July, 1885, it was the law of Missouri that no company engaged solely in the business of life insurance in such state could exempt itself from liability for death by suicide, unless it appeared that the insured contemplated suicide when he made application for such insurance; and, as the defendant company was engaged solely in the business of life insurance, it is clear that the policy issued by it on the day named, on the life of John B. Berry, was so issued subject to the provisions of the statute of Missouri then in force.

Upon the assumption that the act passed by the legislature of Missouri in 1887 supersedes and repeals all provisions of the general insurance laws theretofore applicable to companies operating upon the assessment plan, counsel for the plaintiff in error have made a very able argument in support of the proposition that from the date of the adoption of the act of 1887 the provisions of section 5982 were repealed as to assessment companies, and that the rights of the parties are now to be determined by the terms of the policy sued on, the same as though the suicide clause of the Missouri statute had never been enacted. We do not deem it necessary to determine the question whether this provision of the Missouri statute is to be deemed to be within the rule stated in *Ewell* v. *Daggs*, 108 U. S. 143, 2 Sup. Ct. Rep. 408, to the effect that when the right to avoid a given contract is given to a party thereto by statutory enactment on some ground of public policy, there being nothing in the contract *mala in se*, such right of avoidance being merely a privilege belonging to the remedy, and not being an element in the contract itself, may, by a subsequent repealing statute, be taken away, and the rights of the parties be thus left subject to the provisions of the contract by them entered into, or whether the provision of the Missouri statute preventing the company from exempting itself from liability for death by suicide, in force when the policy was issued, did not become part of the contract of insurance, under the general rule that the law of the place where a contract is entered into and is to be performed becomes part of the contract itself, in which event subsequent legislation by the state could not take away rights acquired under the policy when it was issued. Before this question can arise, it must be made clear that the legislature of the state intended to repeal, by the act of 1887, the provisions of section 5982 in its application to policies previously issued by companies doing business on the assessment plan, and, in our judgment, the intent to repeal the section in this particular is not made plain. In the first place, the legislature of Missouri has not repealed section 5982. It is still the law of the state that companies engaged in the business of life insurance shall not be permitted to exempt themselves from liability for death by suicide not contemplated when

the application for insurance is made. The contention of the plaintiff in error is that the enactment of the act of 1887, regulating the mode of doing business on the assessment plan, and particularly the last clause of section 10 of the act, to wit, "that nothing herein contained shall subject any corporation doing business under this act to any other provisions or requirements of the general insurance laws of this state, except as distinctly herein set forth," takes the defendant company out from under the binding effect of section 5982. It is, however, not made to appear in any way that the defendant company has ever complied with the provisions of the act of 1887, or that it is doing business in Missouri under the liabilities imposed by that act, and therefore it does not appear that it is entitled to the benefits of the last clause of section 10, which are expressly limited to "corporations doing business under this act,"—that is, the act of 1887. The purpose of the act is made still more clear in this regard by section 13 of the act, which declares that "nothing in this act shall be so construed as to impair or in any manner interfere with any of the rights or privileges of any corporation, association, or organization doing life or casualty insurance business in this state under the laws as they now exist." In our judgment, therefore, the provisions of the act of 1887 cannot be made applicable to this case. The contract of insurance upon the life of John B. Berry was made long before the enactment of that statute. It does not appear that the company has ever complied with the requirements of that act, or has ever transacted business under its provisions, and it cannot be made the criterion for determining the rights of the parties to this action. In our judgment, the court below ruled correctly in holding that the policy sued on was a contract made in Missouri, and, as such, that the provisions of section 5982 are applicable thereto; and therefore the judgment is affirmed, at costs of plaintiff in error.